SURVIVAL TECHNOLOGY,
INC., Plaintiff,

v.

John O. MARSH, et al., Defendants.

Civ. A. No. 89–2074.

United States District Court,
District of Columbia.

Aug. 16, 1989.

---

Daniel Bensing, Washington, D.C., for defendants.

Jeffrey Smith, Arnold & Porter, Washington, D.C., for plaintiff.

David Dempsey, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for intervenor Duphar, B.V.

## ORDER

REVERCOMB, District Judge.

The issue in this Motion for Preliminary Injunction is the construction of a timing provision in the Competition in Contracting Act ("CICA") 31 U.S.C. § 3553(d)(1). Plaintiff Survival Technology, Inc. ("STI") is a disappointed bidder on a government contract for nerve-gas antidotes. The contract STI bid upon was awarded to the Dutch manufacturer (and intervenor in this case) Duphar, B.V.[1] STI filed a timely bid protest with the GAO, invoking CICA. Under normal CICA procedures, filing such a protest within 10 days after award of the contract triggers an automatic stay of contract performance. STI is seeking a preliminary injunction of contract performance because of the Army's alleged failure to comply with these automatic stay provisions.

The problem giving rise to the present motion is that STI's protest was not forwarded to the Army by GAO within 10 calendar days of the contract award to Duphar. STI's protest was filed with GAO before the 10 days had run out, but since a weekend intervened, GAO failed to forward the protest (thus triggering the CICA automatic stay) until 12 days had passed. GAO is required by statute to refer the protest to the contracting agency within one "working day" of its receipt of the protest. Because of the weekend, however, GAO failed to do so within 10 *calendar* days of the protest, although it did do so within one working day of its receipt of the protest. The Army now argues that since it did not receive notice within 10 calendar days of the award to Duphar, the automatic stay should not go into effect. The chronology of the relevant events was as follows:

June 1: Duphar was awarded the contract.

June 9: STI filed its bid protest.

June 12: after the weekend, GAO notified the Army of the protest.

The argument between the parties thus centers around what kind of "days" are meant by the statute and the implementing regulations. The various regulations governing CICA's stay provisions refer to "working days," "calendar days," and simple "days."

CICA provides that GAO "shall" notify the agency of a protest "within one *working* day of the receipt of a protest." 31 U.S.C. § 3553(b)(1). Due to the Saturday and Sunday which intervened between GAO's receipt of the protest and its relay of the protest to the Army, GAO was technically in compliance with the statute. CICA also provides that the agency must *receive* notice of a protest within "10 days" of the date of the contract award for the

---

**1.** The Court granted Duphar's Motion to Intervene from the bench on August 14, 1989.

automatic stay to go into effect. 31 U.S.C. § 3553(d)(1). *This* part of the statute does not refer to "working days." Therefore, defendants argue that GAO can comply with its regulations by confining its activities to "working days" while protestors run the risk that GAO's "working days" will run into weekends and delay notification beyond the 10 "calendar days" within which the contracting agency must receive notice of the protest.

Plaintiff directs the Court's attention to GAO's regulations, 4 C.F.R. § 21.0, which provide that

> all "days" referred to are deemed to be "working days" of the federal government except in § 21.4, where the statutory language is repeated. Except as otherwise provided, in computing a period of time prescribed by these regulations, the day from which the designated period of time begins to run shall not be counted, *but the last day of the period shall be counted unless that day is not a working day of the federal government, in which event the period shall include the next working day.* (emphasis supplied).

Plaintiff argues that this regulation provides a computation method for situations such as this one, and directs that the last day of a period of time prescribed by the regulations "shall be counted unless that day is not a working day...." However, § 21.4, referred to in this regulation, and excepted by it from the operation of § 21.0, is, unfortunately, the very section at issue in this case, dealing with the suspension of contract performance. Section 21.4 is explicitly excepted from the operation of § 21.0. Section 21.4 simply says that the contracting agency must receive notice of a protest "within 10 days of the contract award," without adjectives or qualifications. Plaintiff argues that Section 21.0, because it contains the language "except as otherwise provided," states a default computation method designed to cover the unprovided-for situation of "days," and that if the § 21.0 computation rule is not applied to "days" it is a nullity. However, the "days" at issue in this case are not unpro-

vided for by regulation. In this regard, 48 C.F.R. § 33.104(c)(1) covers the computation of time for the automatic stay. 48 C.F.R. § 33.104(c)(1), provides that

> when the agency *receives* from GAO, *within 10 calendar days after award,* a notice of a protest filed directly with GAO, the contracting officer shall immediately suspend performance....

This regulation clearly requires *receipt* of notice from GAO within 10 *calendar* days, which accords with an interpretation of § 21.0 holding that the computation of days for receipt of notice of a protest is "otherwise provided" for, thus taking it out of the "working day" computation method of 4 C.F.R. § 21.0. Section 21.4 is not only excluded explicitly from § 21.0, but is also excepted from it implicitly because it is an "otherwise provided" for situation. The computation rule of § 21.0 is limited by its own terms to "days" for which no other rule is provided.

Since 48 C.F.R. § 33.104(c)(1) covers the computation of the "days" at issue in this case, § 21.0 does not. The number of days within which to invoke the automatic stay is 10 calendar days, rather than ten working days of the federal government. The GAO's own interpretation of the statute supports this conclusion. *See Econ, Inc.,* B–223923, October 29, 1986, 86–1 CPD 489.

Since GAO failed to report the protest to the Army within 10 calendar days of the contract award, despite having reported it within one "working day" of filing by plaintiff, the automatic stay should not be in effect. In the absence of a showing that CICA's automatic stay provisions should have been triggered by plaintiff's protest, the Court concludes that injunctive relief is not appropriate. Accordingly, the Motion for Preliminary Injunction is DENIED.

SO ORDERED.